IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

      Plaintiff,

v.                                                  No. 12-cv-00469 RB/LAM

KENT CARTER;
KENT CARTER, AS TRUSTEE FOR
THE KENT CARTER FAMILY TRUST
PTO,

      Defendants.

<u>MEMORANDUM OPINION AND ORDER</u>

**THIS MATTER** is before the Court on (i) the *United States' Motion for Summary Judgment against Defendant Kent Carter and Defendant Kent Carter Family Trust, PTO*, filed July 1, 2013 (Doc. 44); on pro-se Defendant Kent Carter's *Motion for Injunctive Relief*, filed August 12, 2013 (Doc. 50); and on Carter's *Motion to Dismiss Plaintiff's Motion for Summary Judgment*, filed August 26, 2013 (Doc. 55).  The United States seeks, pursuant to 26 U.S.C. §§ 7401-7403, to reduce to judgment its federal income-tax assessments made against Carter, and to foreclose its federal tax liens on three parcels of real property owned by Carter and/or held in the name of the Kent Carter Family Trust.  The Court has entered a default judgment against the Trust and has also held that Carter is the true and beneficial owner of those three properties.  Having reviewed the parties' submissions and the relevant law, and being otherwise fully advised, the Court will grant the United States' motion and deny Carter's motions.

    **I.**    **Legal standards.**

    While a federal court must construe a pro se litigant's "pleadings liberally, applying a less stringent standard than is applicable to pleadings filed by lawyers," *Whitney v. New Mexico*,

113 F.3d 1170, 1173-74 (10th Cir. 1997) (internal quotation marks omitted), it is not "the proper

function of the district court to assume the role of advocate for the pro se litigant." *Hall v.

Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).   Thus, while the Court will liberally construe a

pro-se litigant's filings, "pro-se status 'does not excuse the obligation of any litigant to comply

with the fundamental requirements of the Federal Rules of Civil and Appellate Procedure.'"

*United States v. Lyman*,   No. 98-4109, 1998 WL 894950, *4 (10th Cir.  Dec. 24, 1998)

(unpublished tax case involving application of 26 U.S.C. §§ 7401-7403) (quoting *Ogden v. San

Juan County*, 32 F.3d 452, 455 (10th Cir. 1994)).

> Summary judgment is appropriate when "there is no genuine dispute as to any material fact and . . . the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  In making that determination, a court "view[s] the evidence and draw[s] reasonable inferences therefrom in the light most favorable to the nonmoving party." *Garrison*, 428 F.3d at 935 (*quoting Simms v. Okla. ex rel. Dept. of Mental Health & Substance Abuse Servs.*, 165 F.3d 1321, 1326 (10th Cir. 1999)).

> Even though we view the evidence in the nonmovant's favor, however, a factual dispute cannot be said to be "genuine" if the nonmovant can do no more than "simply show that there is some metaphysical doubt as to the material facts." *Champagne Metals v. Ken–Mac Metals, Inc.*, 458 F.3d 1073, 1084 (10th Cir. 2006); *accord Rice v. United States*, 166 F.3d 1088, 1092 (10th Cir. 1999) ("To carry his burden, [the non-movant] must present more than a scintilla of evidence.").  That is to say, we will uphold a district court's grant of summary judgment if the evidence is "so one-sided that one party must prevail as a matter of law." *Simpson v. Univ. of Colo. Boulder*, 500 F.3d 1170, 1179 (10th Cir. 2007) (*quoting Bingaman v. Kan. City Power & Light Co.*, 1 F.3d 976, 980–81 (10th Cir.1993)).

> . . . [A] court's "genuineness" review "necessarily implicates the substantive evidentiary standard of proof that would apply at the trial on the merits." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). In other words, "an issue of material fact is genuine only if the nonmovant presents facts such that a reasonable [factfinder] could find in favor of the nonmovant." *Planned Parenthood of the Rocky Mountains Servs. v. Owens*, 287 F.3d 910, 916 (10th Cir.2002).  This means that once the movant has made a showing that there is no genuine dispute of material fact, the non-moving party must "make a showing sufficient to establish the existence of an element essential

to that party's case, and on which that party will bear the burden of proof at trial."
*Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).

*S.E.C. v. Thompson*, 732 F.3d 1151, 1156-57 (10th Cir. 2013).

The United States has satisfied its burden to demonstrate that it is entitled to summary judgment.  Carter, as the non-moving party must, therefore, provide "specific facts showing there is a genuine issue for trial."  *Celotex Corp.*, 477 U.S. at 324, by tendering affidavits or other competent evidence with his response to the summary-judgment motion.  *See id.*; Fed. R. Civ. P. 54(c)(1) (listing types of evidence that are competent to support a party's factual position).  However, "unsupported conclusory allegations do not create a genuine issue of fact."  *E.E.O.C. v. C.R. England, Inc.*, 644 F.3d 1028, 1037 (10th Cir. 2011) (internal quotation marks and bracket omitted).  And the Court is not obligated to consider testimony based solely on conjecture, subjective belief, or inadmissible evidence.  *See Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004) ("Unsubstantiated allegations carry no probative weight in summary judgment proceedings.  To defeat a motion for summary judgment, evidence, including testimony, must be based on more than mere speculation, conjecture, or surmise.") (citation omitted); *Nielander v. Bd. of Cty. Comm'rs*, 582 F.3d 1155, 1165 (10th Cir. 2009) ("subjective beliefs . . . , without facts to back up those beliefs, are not sufficient to create a genuine issue of fact"); *Jaramillo v. Colo. Judicial Dep't*, 427 F.3d 1303, 1314 (10th Cir. 2005) ("Hearsay testimony that would not be admissible at trial is not sufficient to defeat a motion for summary judgment.").

**II.      Undisputed facts.**

3

The United States has been trying to collect unpaid federal income taxes from Carter for many years.   As noted above, the Court has already entered judgment "in favor of the Government and against Kent Carter as Trustee of the Kent Carter Family Trust PTO on Count II of the Amended Complaint;"  and has ruled, on undisputed evidence, that

> Kent Carter is the true and beneficial owner of the Lake Property, the Tulip Property, and the West Edwards Property; that the Kent Carter Family Trust PTO is a nominee, transferee, and/or alter ego of Kent Carter; and that the assets purportedly held in the name of the Kent Carter Family Trust PTO are subject to the federal tax liens resulting from the assessments of the income taxes against Kent Carter.

June 26, 2013 Memorandum Opinion and Order ("MOO") at 4-5 (Doc. 42).

The Government includes a "Statement of Material Facts" in its Motion, supported by forty-five exhibits. *See* Doc. 44-1 at 8-13; Docs. 44-48.  Carter did not timely respond to the motion for summary judgment[1].  Instead, six weeks after the motion was filed, he filed a motion for injunctive relief raising collateral issues and seeking injunctive relief to prevent the United States "from taking any collection measures" against Carter.  *See* Doc. 50 at 1.  He later filed a motion to dismiss the motion for summary judgment, which raises only legal arguments.  *See* Doc. 55.  Neither of these filings attach admissible evidence, affidavits, or exhibits.  Carter, therefore, offers no substantive challenge to the factual statements presented by the Government, nor does he set forth any other facts that would create a genuine issue for trial.  The Court, after

---

[1]   At a hearing before the Magistrate Judge assigned to this case, Carter stated that he did not "realize that he needed to respond" to the motion for summary judgment.  Doc. 53 at 1 (Clerk's minutes of August 21, 2013 hearing).  But Carter has a long history of appearing pro se in the federal courts, including responding to motions for summary judgment and motions to dismiss and asking for extensions of time in which to respond, and appears to be very aware of the necessity of responding to a motion if he wishes to challenge it.  *See, e.g.*, *Carter v. United States*, No. 07–1264 MV/LAM (D.N.M.); *United States v. Carter*, No. 07mc0013 JB (D.N.M.); *Carter v. N.M. Dep't of Taxation & Revenue*, No. 99cv0040 JEC/LFG (D.N.M).  The Court finds that his statement is not credible.

review of the Government's statement of facts and accompanying evidentiary support, and the exhibits attached to the Government's response to Carter's motion to dismiss, *see* Doc. 56-1 (Exs. 1-5), concludes that the statement of facts is properly supported, and that the facts are material and undisputed, and the Court adopts those undisputed facts.

**III.  Analysis**

   **A.  The United States is entitled to summary judgment.**

   To reduce the tax assessments to money judgments,

   the government generally establishes a prima facie case when it shows a timely
   assessment of the tax due, supported by a minimal evidentiary foundation, at
   which point a presumption of correctness arises.   A presumption of correctness
   attaches to the Commissioner's assessment, once some substantive evidence is
   introduced demonstrating that the taxpayer received unreported income.

*United States v. McMullin*, 948 F.2d 1188, 1192 (10th Cir. 1991) (citation omitted).   In

*McMullin*, the Government supported its assessments with the testimony of two IRS agents who

had audited the taxpayer's tax returns and documents associated with that audit.  *See id.* at 1191.

   As the United States points out, Carter has already extensively litigated the issue whether

he received taxable income between 1994 and 2001 that he did not report to the IRS, and on

which he paid no income taxes, and he has made judicial admissions that he did, in fact, receive

unreported income in his construction business during those years.   In his 2007 civil suit filed in

this Court against the United States, the IRS, and   Revenue Officer Michael Pryor, Carter

alleged, among other things, that the compensation he received for his labor between 1994 and

1999 was not taxable and that the IRS's use of levies and liens to collect his outstanding tax

liability for tax years 1995 through 2001 had damaged him.  *See Carter v. United States*, No.

07cv1264 MV/LAM, 2009 WL 4269595 (D.N.M. Oct. 30, 2009).   As background to this case,

the Court will quote from the 2009 MOO dismissing Carter's suit.  During the course of the 2007

litigation, the

> IRS decided to suspend further collection on the 1995 through 1999 income-tax
> debts and to release all of its existing levies.  Accordingly, on April 10, 2008, the
> IRS issued to Carter another "Final Notice, Notice of Intent to Levy and Notice of
> Your Rights to a Hearing," setting forth the amounts Carter owed for the tax years
> 1995 through 1999 and informing him of his right to an administrative appeal.
> On May 8, 2008, Carter filed with the IRS a "Request for a Collection Due
> Process or Equivalent Hearing" for tax years 1995 through 1999.  During the
> appeals process, Carter again explained why he disputed the prior assessments,
> the penalties, and the proposed collection activities by raising many of the same
> arguments he made in his original federal Complaint, and he resubmitted Forms
> 1040 for tax years 1995 through 1999 that he had signed in February 2007 when
> he requested a refund/rebate, which also form the basis of some of his federal
> claims.  All of those returns reflected an adjusted gross income of zero, based on
> Carter's theory of taxation.
>
> On December 18, 2008, the IRS Appeals Office issued to Carter a "Notice of
> Determination Concerning Collection Actions Under Section 6320 and/or 6330"
> pertaining to tax years 1995 through 1999, which abated several penalties
> previously imposed, but which rejected the rest of Carter's arguments and
> sustained the IRS' proposed levies.   The Appeals Council examined the records
> and found that Carter had timely been issued statutory notices of deficiency for
> tax years 1995 through 1999 and that he was "afforded the opportunity to
> challenge the merits of the underlying 1040 tax liability for the 1995, 1996, 1997,
> 1998 and 1999 tax years during the hearing. The Appeals Council also found that
> the pre-levy notice requirements were met.  But the Appeals Council concluded
> that the "IRC § 6020 returns" had not been properly prepared by the IRS in 2005,
> and it abated the penalties issued under § 6651(a)(2).
>
>  As to Carter's attempt to challenge the validity of the frivolous-return penalties
> imposed for the 1995-2001 tax years under 26 U.S.C. § 6702, the Appeals
> Council concluded that Carter had already requested and received a collection-
> due-process hearing with regard to those penalties, and noted that it had issued a
> notice of determination sustaining the proposed levy and tax lien pertaining to
> those penalties on October 4, 2007.  As mentioned above, Carter had not appealed
> from that 2007 determination to the Tax Court..
>
> The December 2008 Notice set forth the appeals process, which requires the
> taxpayer to "file a petition with the United States Tax Court within 30 days from
> the date of this letter" if he desires to challenge the Appeals Council's
> determinations.  The Notice explained that, "[t]he courts cannot consider your
> case if you file late. If an appeal is filed in the incorrect court (e.g., United States

District Court), you will not be able to refile in the United States Tax Court if the
time period for appeal has expired."

On August 20, 2008, before he received the December 2008 decision of the

Appeals Council, Carter filed an Amended Complaint in this case.  The bulk of

Carter's allegations in his Amended Complaint challenge the validity of the

underlying 1995-1999 income-tax assessments, and most are legal conclusions.

*Carter v. United States*, No. 07cv1264 MV/LAM, 2009 WL 4269595 at \*1-\*2 (D.N.M. Oct. 30,

2009) (unpublished) (internal citations to record omitted).  After extensive briefing, the Court

dismissed and/or granted summary judgment to the Government on all of Carter's claims, and

dismissed them with prejudice.  *See id.* at \*3-\*11.  Carter appealed, but the Tenth Circuit

affirmed the Court's decision.  *See Carter v. United States*, No. 09-2314, 389 Fed. App'x 809,

2010 WL 2982844 (10th Cir. July 29, 2010).  Because he had failed to timely appeal from the

Appeals Council's determination regarding the validity and amount of the underlying

assessments, the Tenth Circuit noted that Carter "can no longer challenge the underlying

assessments."  *Id.* at 811, 2010 WL 2982844 at \*1.

In the case at bar, the Government has demonstrated that the past-due amounts owed for

federal income taxes and penalties are supported by certified Form 4340 transcripts, *see* Doc. 47-

4 at 1-65 (Ex. 35); and by IRS Transcripts of Account, *see* Doc. 47-5 (Ex. 36 - Pryor Affidavit

regarding foundation and authenticity of the transcripts), Docs. 44-3 through 44-11 (copies of

Transcripts of Account), Docs. 45-1 through 45-3 (copies of Transcripts of Account).  The IRS

Transcripts of Account show that Carter's income-tax liabilities arise from 1995 through 1999

and 2001, plus civil penalties for filing frivolous returns.

When Certificates of Assessment are submitted as evidence of the validity of the Government's claim for unpaid taxes, if the taxpayer does not present evidence calling into question the procedural validity of the Certificates, "a district court may properly rely on the forms to conclude that valid assessments were made." *Guthrie v. Sawyer*, 970 F.2d 733, 737-38 (10th Cir. 1992) (internal quotation marks and citation omitted); *United States v. Tempelman*, Nos. 00-1556, 00-1786, 00-1887, 12 Fed. App'x 18, 20, 2001 WL 725370 at *1 (1st Cir. June 26, 2001) (affirming reduction of assessments to judgment and order of foreclosure under §§ 7401-03 and holding that "[t]he district court properly determined that the 'Certificate of Assessments and Payments' constituted presumptive proof both that the assessments were valid and that notice and demand for payment were effected" where the tax protesters failed to rebut the presumptions).  Carter has presented no evidence that the Certificates of Assessment are not valid.

Because the Government has established with Carter's judicial admissions that Carter received unreported income but refused to pay taxes on that income, and has also submitted the Certificates of Assessment, its "evidence met the *McMullin* test."  *United States v. Neilson*, No. 91-4175, 1992 WL 401598 *3 (10th Cir. Dec. 23, 1992) (holding that certificates of assessment plus the tax protestor's testimony "that he had not filed a tax return showing his income since 1970" but had "been the sole source of financial support of his family of eight during the tax years in question" met *McMullin's* evidentiary requirement; and affirming the district court's reduction of those assessments to a judgment and order foreclosing tax liens on property). Therefore, the Government is entitled to a judgment on the past-due amounts, including penalties and interest.

It is undisputed that Carter refused to pay the past-due income taxes at issue after demand.  Therefore, the Government has also established that it has a valid federal tax lien.

> If any person liable to pay any tax neglects or refuses to pay the same after
> demand, the amount (including any interest, additional amount, addition to tax, or
> assessable penalty, together with any costs that may accrue in addition thereto)
> shall be a lien in favor of the United States upon all property and rights to
> property, whether real or personal, belonging to such person.

26 U .S.C. § 6321. A lien imposed pursuant to § 6321 arises "at the time the assessment is made," and continues until the judgment is satisfied or the statute of limitations for enforcement expires. 26 U.S.C. § 6322. Once a Section 6321 lien attaches, the judgment may be satisfied by selling property owned by the delinquent tax payer. *See* 26 U.S.C. § 7403. The statutory scheme further contemplates the lawful effect of a lien imposed by Section 6321, even without a notice of lien having been recorded. *See* 26 U.S.C. § 6323.

> A federal tax lien, described as a "secret lien," *see United States v. Security Trust
> & Savings Bank*, 340 U.S. 47, 53, 71 S. Ct. 111, 114, 95 L .Ed. 53 (1950)
> (Jackson, J., concurring) (citation omitted), is effective upon assessment against
> all persons, even in the absence of recordation of the lien. *See Rice Investment
> Co. v. United States*, 625 F.2d 565, 568 (5th Cir. 1980).

*Don King Prod., Inc. v. Thomas*, 945 F.2d 529, 533 (2nd Cir. 1991).

The validity of Carter's tax liability underlying the lien is firmly established. It is undisputed that Carter filed no tax returns and paid no taxes on this income. Pursuant to 26 U.S.C. § 6322, therefore, the liens upon all of Carter's property and rights to, or beneficial interests in, property arose at the time the tax assessments were made and will continue through the satisfaction of the final judgment.

In summary, as noted above, Carter failed to meet his burden of showing that a genuine issue of material fact remains as to the United States' right to reduce its assessments to judgment, or to whether it has a valid lien on all of Carter's property.  To be entitled to enforce its tax liens, the United States had to prove only that the liens arose at the time Carter failed to pay the taxes assessed against him and that the statute of limitations has not lapsed.  *See* 26 U.S.C. §§ 6321, 6322; *Gardner v. United States*, 34 F.3d 985, 987 (10th Cir. 1994).  Because there is no genuine issue as to the correctness of the amounts reflected in the Certificates of Assessments, and because the United States has shown that its right to foreclose on the liens has not lapsed, the United States is entitled to summary judgment as a matter of law and, therefore, also is entitled to foreclose on its liens.

**B.  The Court will deny the motion to dismiss.**

Carter, appearing both individually and as the Trustee of the Kent Carter Trust, moved to dismiss the summary-judgment motion, contending only that the pages of the motion were "out of order" and  "copied on both sides of the paper," and that there was not a "separate" certificate noting service on the Kent Carter Trust.  Doc. 55 at 1.  The Court will strike the motion insofar as it purports to be a motion Carter improperly filed on behalf of the Kent Carter Trust; the Trust has no attorney.  Substantively, the Court will deny the motion to dismiss because the reasons given are not sufficient grounds for dismissal, and Carter does not suggest that he has been unfairly prejudiced by the Government's failure to properly collate its motion.

Carter also makes untimely and unsupported legal arguments in his motion that are relevant to the Government's motion for summary judgment.  He contends that the United States' exhibits were not signed on the date of assessment, and suggests, without citing authority,

10

that the United States had a burden to produce 1099s, W-4s, and/or W-2 to support its liens and levies.  Doc. 55 at 2.  Carter presents no legal authority, however, to show that a Certificate of Assessment must be signed on the same date the underlying assessment was made, and the Tenth Circuit has consistently relied on the certificates as presumptively-correct proof of the IRS's underlying assessments.  *See Guthrie*, 970 F.2d at 737-38.

> A taxpayer who wishes to challenge the activities of the IRS in sending a notice of deficiency or issuing a notice of assessment and demand for payment must bring suit under a statute that waives the sovereign immunity of the United States. *See generally United States v. Dalm*, 494 U.S. 596, 110 S. Ct. 1361, 108 L. Ed. 2d 548 (1990).  The Anti–Injunction Act, 26 U.S.C. § 7421 (1988), prohibits suits restraining the assessment or collection of taxes, with a significant exception . . . .  Section 6213(a) of the Act specifically authorizes an injunction prohibiting an assessment or levy when the taxpayer has not received a notice of deficiency.

*Id.* at 735.   As noted above, this Court has determined in prior litigation that Carter received a notice of deficiency, but he failed to challenge the Appeals Council's decision in the Tax Court, and he cannot do so now.  *See Carter*, 389 Fed. App'x at 811, 2010 WL 2982844, *1; *Vance v. United States ex rel. Dowie*, 109 Fed. App'x 294, 296, 2004 WL 2005930, *2 (10th Cir. 2004) (concluding that, because the taxpayer "had the opportunity ... to challenge the tax assessments and liens in Tax Court," he could not later "attempt to litigate or relitigate those issues years later" by "collaterally attacking the assessments" in a separate suit in district court).

Carter has already litigated the proper basis of the assessments before the Appeals Council and waived an appeal in Tax Court; he has previously admitted in his filings that he received income from self-employment that he did not report; and the IRS was not required to support the assessments with proof of 1099s, W-4s, and W-2s that did not exist because Carter was self-employed and owned rental properties.

Again without citing authority, Carter argues that the most-recently filed notices of liens could not be refiled after they were self-released.  Doc. 55 at 2.  The United States, however, has submitted unchallenged statutory and case law demonstrating the IRS's authority to timely refile notices of federal tax liens after they have been self-released and regarding the suspension of the statute of limitations during various proceedings.   *See* Doc. 44-1 at 18-20, 26-29; 26 U.S.C. § 6323(g), 26 U.S.C. §6325(f); 26 U.S.C. §6502(a); 26 U.S.C. § 6330(a)(3)(B); 26 U.S.C. § 6330(e)(1).  The United States has also submitted unchallenged factual allegations regarding the dates its right to enforcement of the liens would lapse.  The Court concludes that the United States is entitled to foreclose on its tax liens.

**C.  The Court will deny the request for injunctive relief.**

Carter seeks an order granting injunctive relief barring any levies the United States has imposed against him.  As the Government points out, however, the Court is barred from granting injunctive relief by the Anti-Injunction Act, and Carter has cited nothing that waives the United States' sovereign immunity from suit regarding that claim.

The Anti-Injunction Act provides that "no suit for the purpose of restraining the assessment or collection of any tax shall be maintained in any court by any person . . . ."  26 U.S.C. § 7421(a); *see Fostvedt v. United States*, 978 F.2d 1201, 1203 (10th Cir. 1992) (holding that the litigant's "attempt to delay and/or prevent the IRS from . . . collecting the income tax deficiencies and penalties due because of Petitioner's failure to file income tax returns" was "prohibited" by the Act). The Act excepts from this limitation petitions to the United States Tax Court for a redetermination of a proposed deficiency and certain civil suits in the district court, none of which apply in this case.  *See* 26 U.S.C. § 7421(a).

12

> The manifest purpose of [§] 7421(a) is to permit the United States to assess and collect taxes alleged to be due without judicial intervention, and to require that the legal right to the disputed sums be determined in a suit for refund.  In this manner the United States is assured of prompt collection of its lawful revenue.

*Enochs v. Williams Packing & Navigation Co.*, 370 U.S. 1, 7 (1962); *see Lonsdale v. United States*, 919 F.2d 1440, 1442 (10th Cir. 1990) (noting, in case in which the litigants sought to prevent the United States from levying their wages that federal tax assessments and levies may be attacked only through the statutorily-prescribed process).  The Court will deny the motion.

**THEREFORE, IT IS ORDERED** that the United States' motion for summary judgment [Doc. 44] is GRANTED; that Carter's motion for injunctive relief [Doc. 50] and his motion to dismiss [Doc. 55] are DENIED, and that Kent Carter is indebted to the United States in the amount of $895,256.71, plus interest and penalties from June 10, 2013, until paid, for the federal income taxes assessed against him for the tax years 1995-1999 and 2001 and for penalties assessed against him for tax periods 1995-2001;

**IT IS FURTHER ORDERED** that the United States has valid liens on the Tulip, Lake, and West Edwards properties in Carlsbad, NM, as described in the deeds with legal descriptions submitted to the Court, and that it may foreclose its liens by selling those properties in accordance with law;

**IT IS FURTHER ORDERED** that the proceeds from the sale of these properties shall be applied to Carter's outstanding federal income-tax debt.

_____
**ROBERT C. BRACK**
**UNITED STATES DISTRICT JUDGE**

13